IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CATHY NORMAN, | : | CIVIL ACTION NO. |
| | : | 1:12-CV-0587-WSD-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Acting | : | **FINAL REPORT AND** |
| Commissioner of Social Security, | : | **RECOMMENDATION ON AN** |
| | : | **APPEAL FROM A SOCIAL** |
| Defendant. | : | **SECURITY DISABILITY ACTION** |

Plaintiff Cathy Norman ("Plaintiff" or "Claimant") is a 45-year-old female seeking Social Security Disability Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges disability and entitlement to benefits on the basis of the severe impairments of lumbago, degenerative joint disease of the left foot, mild S1 radiculopathy, history of migraine headaches, hypertension, obesity, depression, and anxiety. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"),[1] which denied Plaintiff's claim for benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is thus automatically substituted as the Defendant in lieu of former Commissioner Michael J. Astrue. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g). The Court will refer herein to the Acting Commissioner as the Commissioner.

Plaintiff filed an application for DIB on July 29, 2008, alleging on onset date of disability of December 19, 2002.[2] Record (hereinafter "R.") at 136-143, 154. After the Commissioner's staff initially denied the applications, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Joseph L. Brinkley held a videoconference hearing on May 25, 2010. R. at 34-71. On September 13, 2010, ALJ Brinkley found that Plaintiff was "not disabled" as defined by the Act from the alleged onset date through the date of last insured. R. at 16-28. On December 23, 2011, the Appeals Council of the Social Security Administration denied Plaintiff's Request for Review, making the ALJ's decision final. R. at 1-6. Plaintiff then filed this action on February 23, 2012. It is now before the undersigned and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.   STANDARD FOR DETERMINING DISABILITY

An individual is "disabled" for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[2] Although the record reflects that Plaintiff also filed an application for Supplemental Security Income ("SSI") on July 29, 2008, the Plaintiff's brief indicates that she is only seeking DIB at this time. *See* R. at 136-143; Pl. Br. at 2.

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Any impairments must result from anatomical, psychological, or physiological abnormalities demonstrated by medically accepted clinical or laboratory diagnostic techniques, and must prevent the claimant from substantial gainful work. 42 U.S.C. §§ 423(d)(2)–(3).

Claimant and the Commissioner share the burden of proof. Claimant bears the initial burden of establishing a "disability" by demonstrating that he cannot perform his former type of work. Once Claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience and impairment, the claimant can perform other jobs. Claimant bears the ultimate burden to prove that he cannot engage in any substantial gainful activity. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The Commissioner must use a five-step sequential analysis:

(1)     Is Claimant currently working? If so, the claim is denied.

(2)     Is the claimed impairment severe; that is, does the impairment or combination of impairments significantly limit the individual's physical or mental ability to do basic work activities? If not, the claim is denied.

3

(3)    Does the impairment equal or exceed in severity certain impairments described in the impairment listings in the regulations? if so, Claimant is automatically entitled to disability benefits.

(4)    Does Claimant have sufficient residual functional capacity to perform past work? if so, the claim is denied.

(5)    Considering Claimant's age, education, work experience, and residual functional capacity, can Claimant perform any other gainful and substantial work? If so, the claim is denied.

*See* 20 C.F.R. §§ 404.1520–404.1576.

In addition, when a claimant is only seeking disability insurance benefits under Title II of the Act, the claimant must establish that he or she became disabled on or prior to the date that her insured status expired. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005)."). In this case, the parties agree that Plaintiff is seeking DIB under the Act and that December 31, 2008, was the date she was last insured. Thus, the relevant issue before the ALJ was whether the Plaintiff was disabled under the Act for the time period between December 19, 2002, her alleged onset date of disability, and December 31, 2008, the date she was last insured.

4

## II.  FINDINGS OF THE ALJ

The ALJ made the following findings of fact ("FOF"):

(1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 19, 2002 through her date last insured of December 31, 2008 . . . .

(3) Through the date last insured, the claimant had the following severe impairments: lumbago, degenerative joint disease of the left foot, mild S1 radiculopathy, history of migraine headaches, hypertension, obesity, depression and anxiety . . . .

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

(5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work, as defined in 20 CFR 416.1567(b), except the claimant: requires a sit and stand option at-will; is capable of unskilled work with adequate skills for making decisions and judgments, fairly; maintains a fair ability to appropriately interact with co-workers, supervisors and the general public; can understand, remember and carry out instructions in a work place; and cope adequately with workplace demands and responsibilities.

(6) Through the date last insured, the claimant was unable to perform any past relevant work . . . .

(7) The claimant was born on September 5, 1967 and was 41 years old, which is defined as a younger individual age 18-49, on the date last insured . . . .

(8) The claimant has at least a high school education and is able to communicate in English . . . .

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . .

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed . . . .

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from December 19, 2002, the alleged onset date, through December 31, 2008, the date last insured . . . .

R. at 18-27 (citations omitted).

## III.   CLAIMS OF ERROR

Plaintiff alleges that the ALJ erred when he: (a) failed to take into account Plaintiff's longitudinal history of complaints and attempts at relief before issuing a negative credibility finding; and (b) found that Plaintiff is capable of sustaining work activities in an ordinary work setting on a regular and continuing basis.

## IV.   SCOPE OF JUDICIAL REVIEW

This Court's review is limited. The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The Court may only determine whether substantial evidence supports the Commissioner's findings, and whether he applied proper legal standards. The Commissioner's findings are otherwise conclusive. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991);

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. *Walker*, 826 F.2d at 999.

## V.    ANALYSIS OF CLAIMS OF ERROR

Plaintiff argues that the ALJ erred when he failed to take into account Plaintiff's longitudinal history of complaints and attempts at relief before issuing a negative credibility finding. The undersigned finds, however, that the ALJ applied the correct legal standards when assessing the Plaintiff's credibility and that substantial evidence supports his decision. In considering the ALJ's decision as a whole, the undersigned finds that he properly considered the Plaintiff's longitudinal medical history as

documented in the record. Plaintiff argues further that substantial evidence does not support the ALJ's conclusion that the Plaintiff is capable of sustaining work activities in an ordinary work setting on a regular and continuing basis. The undersigned finds, however, that substantial evidence also supports that finding.

A.   *ALJ's Credibility Finding*

Plaintiff first argues that ALJ Brinkley erred when he evaluated the credibility of her testimony regarding her pain and other symptoms from her various medical impairments, both physical and mental. Plaintiff contends that the ALJ erred by failing to take into account Plaintiff's longitudinal history of complaints and attempts at relief before issuing a "negative credibility finding." Pl. Br. at 7.

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective complaints of symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1993); *see also Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002). The ALJ is not required to cite *Holt* or to refer to the three-part pain standard,

8

so long as the findings and discussion indicate that the standard was applied. *Wilson*, 284 F.3d at 1225-26.

In addition, Social Security Ruling 96-7p[3] states: "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186. The ALJ is not required to cite particular regulations, cite specific cases, or use particular phrases or formulations in his opinion, so long as the Court is able to determine if the ALJ applied the statutory requirements and the Commissioner's regulations as applied by this Circuit. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). The ALJ's level of specificity in articulating reasons for the credibility finding need only be "enough to enable [the reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citations and internal quotes omitted).

If the ALJ refuses to fully credit a claimant's testimony in a case in which such testimony is critical, he must articulate specific reasons supported by substantial

---

[3] Although Social Security Rulings issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts do and should defer to the agency's interpretation of its own regulations, unless the interpretation is inconsistent with statutes or regulations. *Holohan v. Massanari*, 246 F.3d 1199, 1201 n.1 (9th Cir. 2001); *accord Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

evidence for questioning the claimant's credibility. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). The determination of whether a medical condition can reasonably be expected to give rise to the alleged pain or other limitations claimed by a claimant is a question of fact subject to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). In addition, it is well established that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). Nevertheless, while the Commissioner is responsible for evaluating a claimant's credibility, a reviewing court should determine whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. *See Carnes*, 936 F.2d at 1219; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Accordingly, as a task exclusively delegated to the factfinder, a credibility finding that is "clearly articulated . . . with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In accordance with the three-step process required when evaluating a claimant's statements about pain and other subjective symptoms of medical impairments, the ALJ first found that there was an underlying medically determinable physical or mental impairment, and that the impairment could reasonably be expected to produce the Plaintiff's subjective complaints of her symptoms. R. at 22. The ALJ next proceeded

10

to evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit her ability to do basic work activities. *Id.* The ALJ evaluated the Plaintiff's subjective complaints of her symptoms and concluded as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. at 22.

The ALJ then went on to discuss the Plaintiff's complaints about her specific symptoms and why he found that her testimony was not fully credible regarding the severity of her symptoms and their limiting effects on her ability to work. First he discussed her allegations that she had a "pinched nerve and significant limitations in her abilities because of her back impairment," and found that "the objective medical evidence does not support that allegation." R. at 23.

> The earliest objective evidence from early 2003 indicated a normal lower back. (Ex. 1F, p.2) The claimant's later magnetic resonance images from August of 2007 showed again a "normal lumbar spine." (Ex. 27F, p.9) The never conduction studies from September indicated "mild radiculopathy" but without any anatomical deformity that would actually be causing it. (Ex. 10F, p.3) The claimant was observed with a slightly antalgic gait in October of 2007, but she was noted as having pain free ranges of motion in her hips with only pain on extension of her lower

11

> back. (Ex. 28F, p.16) The claimant attempted physical therapy but was self-discharged and did not follow up with her physician. (Ex. 6F, p.28) One might expect either extra effort or more frequent treatment for pain that is so horrible that it renders the individual capable of work.

R. at 23.

The ALJ also discussed the Plaintiff's testimony that "she could not walk a block because of pain in her foot." R. at 23. The ALJ noted that she had suffered an injury to her foot in May of 2007 after a clothing rack fell on her, but that the medical evidence in the record did not support her allegations of severe pain that left her unable to walk.

> In August of 2007, her orthopedic specialists noted a "paucity of objective findings" as to the etiology of her left foot pain. (Ex. 28F, p.24) Following her self-discharge from physical therapy in October of 2007, there does not appear to be any further treatment of her alleged foot pain. The residual functional capacity is consistent with an individual with the kind of foot pain reported by the claimant as well as the kind of non-durational injury objective corroborated in this case.

R. at 23. The ALJ also noted that the Plaintiff was treated by orthopedic specialists in November of 2007, but she was "observed without any limp and using no assistive devices for ambulation." *Id.*

The ALJ then discussed the Plaintiff's allegation that she suffered "frequent migraines" as a disabling impairment, but he noted that "the scarcity of supportive

objective medical evidence of the severity as reported by the claimant is illustrative."

R. at 24.

> The claimant was not seen by any doctors for her frequent and allegedly, disabling headaches until August of 2005. Her doctor noted that she had a history of migraines bu the objective examination turned up nothing. (Ex. 25F, p. 6) The claimant was not seen for another year for any frequent headaches. At that time, the claimant was treated and was asked to get more exercise and modify her diet. (Ex. 13F, p. 5) The residual functional capacity fully compensates for the claimants [sic] allegedly disabling frequent migraines. The medical evidence establishes the existence of migraine headaches but does not support the contention that they are frequent or disabling.

R. at 24.

The ALJ also discussed the Plaintiff's testimony that her "depression and anxiety prevented a great deal of activities," and that her depression also caused her to have memory problems and prevented her from being able to "practically function." R. at 24. The ALJ concluded that "[t]he objective medical evidence does not support such limited abilities." *Id.* He noted that, although the evidence supports the Plaintiff's allegation that she had a difficult period following a miscarriage in December of 2002, that period lasted for less than six months and she told her therapist in January of 2003 that she was feeling better emotionally and physically. *Id.* The ALJ also concluded that the Plaintiff's activities of daily living did not support her allegation that her depression and anxiety were disabling.

> In activities of daily living, the claimant indicated that she had no trouble with self-care. She reported that she prepared breakfast for her husband and three-year-old son. She also reported no problems caring for her young son, which can be quite demanding both physically and emotionally, without any particular assistance. (Ex. 15F, p.2)

*Id.*

The ALJ further noted that the results of the consultative examination did not support the Plaintiff's testimony regarding the severity of her mental impairments.

> During the consultative examination, the claimant indicated some social issues but nothing predominantly serious. The consultative examiner opined that the claimant should have little difficulty in interacting appropriately with co-workers, supervisors and the general public. (Ex. 15F, p.5) This supports the residual functional capacity determined above and is supported by the limited treatment the claimant has received for her allegedly disabling mental impairment during the relevant time.

*Id.*

The Plaintiff argues that the ALJ's credibility finding was in error because he "failed to take into account Ms. Norman's longitudinal history of complaints and attempts at relief before issuing a negative credibility finding." Pl. Br. at 7. Plaintiff argues that, "the evidence of record is replete with Ms. Norman's continued efforts to seek relief from pain, [but] the ALJ commented in his decision that 'one might expect either extra effort or more frequent treatment for pain that is so horrible that it renders the individual capable of work.'" *Id.* at 7-8.

14

Social Security Ruling 96-7p, which provides guidelines regarding the Commissioner's assessment of the credibility of an individual's statements regarding the severity of symptoms, states that, "[a]part from the medical signs and laboratory findings, the medical evidence, especially a longitudinal medical record, can be extremely valuable in the adjudicator's evaluation of an individual's statements about pain or other symptoms." SSR 96-7p, 1996 WL 374186.

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.*

Plaintiff argues that she has received "an extraordinary amount of treatment for her continued complaints of pain including pain medication, chiropractic treatment and physical therapy," but the ALJ failed to take that evidence into consideration in making his credibility determination. Pl. Br. at 9. In response, the Commissioner argues that there is nothing in the ALJ's decision that indicates that he failed to take that evidence into consideration. To the contrary, the Commissioner argues, the ALJ's decision expressly stated that his finding was based on the entire case record. *See* R. at 22 (the ALJ stated that he made his residual functional capacity finding "[a]fter careful consideration of the entire record," including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").

Furthermore, the Commissioner argues, the ALJ offered several reasons in support of his credibility finding, and the Plaintiff has not disputed any of those specific reasons, nor has she established that those reasons were unsupported by substantial evidence. *See* Def. Br. at 6. The undersigned agrees, and finds that the ALJ's evaluation of the Plaintiff's credibility applied the proper legal standards and his conclusions were supported by substantial evidence in the record.

As discussed above, the ALJ offered several reasons for finding that the Plaintiff's testimony was not completely credible. The ALJ noted the lack of objective

16

medical evidence supporting Plaintiff's complaints of a pinched nerve and significant pain and limitations from her back impairment; her failure to see her chiropractor regularly; her low doses of pain medication, including her low doses of Tramadol and Flexeril for pain relief; the lack of objective evidence supporting her complaints of severe foot pain and difficulty walking; the lack of objective medical evidence supporting the severity and frequency of her migraine headaches; the lack of objective evidence documenting her complaints that her depression and anxiety were so severe that they caused her to be unable to function; and her testimony regarding her activities of daily living, including her testimony that she needed no assistance caring for her young son. R. at 23-24. The undersigned finds that the ALJ fully articulated those reasons for his finding that the Plaintiff's testimony was not fully credible, and that substantial evidence supports those reasons.

The undersigned further finds that the ALJ's decision indicates that he complied with the requirement of SSR 96-7p to consider the claimant's "longitudinal medical record." The ALJ detailed in his decision both the Plaintiff's testimony of her pain and her attempts at seeking relief for her pain over a period of several years, but he found that the objective medical evidence did not support the level of severity complained of by Plaintiff. As SSR 96-7p states, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or

if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186. The regulation also provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* But Plaintiff has not pointed to any evidence in the record that she offered any explanation for her relatively infrequent or irregular medical visits to seek treatment for her allegedly disabling impairments.

Plaintiff further argues that the ALJ "fails to take into account most of [her] treatment notes in his decision." Pl. Br. at 9. While the ALJ did not specifically reference every single treatment note in his decision, the decision reflects that he considered the record as a whole. Moreover, the Eleventh Circuit has declined to impose overly "rigid requirements" when reviewing disability decisions. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). An ALJ need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Id.* at 1211

18

(quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). In this case, the record consists of 1153 pages, and it would have been impossible for the ALJ to cite from every treatment note in the record. The undersigned finds that, in consideration of the entirety of the ALJ's decision, his credibility finding was based on substantial evidence in the record.

Plaintiff argues further that the ALJ completely ignored the opinion of her treating orthopedist, Dr. Lichtenfield, who opined in February of 2008 that she should not perform any prolonged standing or walking for more than ten minutes in an hour. Pl. Br. at 9-10. Plaintiff argues that "Dr. Lichtenfield's opinion should have been granted deference based on his longitudinal treating perspective for over a year." *Id.* at 10.

The undersigned first notes that Plaintiff is incorrect that the ALJ ignored the opinion of Dr. Lichtenfield. Although the ALJ did not refer to Dr. Lichtenfield by name,[4] he expressly referred to Dr. Lichtenfield's opinion in his decision, and indicated that he considered it:

> In early 2008, her orthopedic specialist placed her on a very noninvasive work restriction. She was relegated to jobs where she would have no

---

[4] In the report from Southern Orthopedics dated February 5, 2008, the name of the physician signing the form is illegible. *See* R. at 473. This appears to be the medical opinion which Plaintiff claims was from her treating orthopedist Dr. Lichtenfield. *See* Pl. Br. at 9-10.

prolonged standing or walking more than ten minutes every hour. (Ex.
10F, p.1) . . . The residual functional capacity determined above is fully
supported by the objective medical evidence during the relevant time. An
individual with the mild objectively verifiable symptoms the claimant
has is more than capable of light work.

R. at 23; *see* R. at 473.

Furthermore, while the Plaintiff is correct that the testimony of a treating

physician must generally be given substantial or considerable weight, the ALJ is not

bound by the opinion of the treating physician. 20 C.F.R. § 404.1527(d). The ALJ

may reject a treating physician's report if it is not accompanied by objective medical

evidence, is wholly conclusory, lacks persuasive weight, or when the evidence

supports a contrary conclusion. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.

1991); *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985); *Bloodsworth v.

Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). If, however, the ALJ gives less weight

to the opinion of a treating physician the reasons for doing so must be clearly

articulated. The failure to articulate those reasons is reversible error. *Lewis v.

Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Under the regulations, an ALJ who does not give controlling weight to the

opinion of a treating physician must "apply the factors listed in paragraphs (d)(2)(i)

and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6)

of this section in determining the weight to give the opinion." *See* 20 C.F.R.

§§ 404.1527(d)(2), 416.927(d)(2). The factors from (d)(2)(i) and (d)(2)(ii) include length of treatment, frequency of treatment, and the overall nature and extent of treatment. *See* 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii). Factors from (d)(3) through (d)(6) include the extent to which the opinion is supported by medical signs and laboratory reports, consistency with the record as a whole, specialization of the doctor, and other factors as necessary. *See* 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6).

In this case, the ALJ's decision indicates that he gave appropriate weight to the report of Dr. Lichtenfield, but he found that Dr. Lichtenfield's opinion was consistent with the Plaintiff's residual functional capacity. R. at 23. In the ALJ's evaluation of the Plaintiff's residual functional capacity, he concluded that she was capable of performing light work, with certain restrictions, including the requirement that she have a "a sit and stand option at-will." R. at 22. Plaintiff has not explained how this finding is inconsistent with the opinion of Dr. Lichtenfield that the Plaintiff is limited in her ability to perform prolonged standing or walking, and the undersigned concludes that it is not.

In sum, the undersigned finds that, in consideration of the entirety of the ALJ's decision, the ALJ's credibility finding was based on substantial evidence in the record

and he did not err when he concluded that the Plaintiff's testimony regarding her pain and other subjective symptoms was not fully credible.

B.   *ALJ's Finding Regarding Plaintiff's Ability to Work on a Regular and Continuing Basis*

Plaintiff next argues that substantial evidence does not support the ALJ's conclusion that the Plaintiff is capable of sustaining work activities in an ordinary work setting on a regular and continuing basis. According to Plaintiff, the medical evidence in the record indicates that she is unable to perform sustained work activities on a regular basis and the ALJ failed to consider this evidence.

Pursuant to SSR 96-8p, the ALJ must determine the claimant's residual functional capacity ("RFC") on the basis of the claimant's ability to work a full eight-hour day.

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

SSR 96-8p, 1996 WL 374184.

Plaintiff argues that the opinion of Dr. Boone-Sanford, a psychiatric consultative examiner, and the opinion of Dr. Makim, her treating psychiatrist, support

22

a finding that she is unable to perform work activities for eight hours a day, five days a week. Pl. Br. at 12-13. Plaintiff argues that the ALJ failed to take these opinions into consideration and failed to give them the proper weight in making the finding that she could perform light work on a sustained basis.

The record reflects that Shirley Boone-Sanford, a psychologist, performed a consultative psychological evaluation of the Plaintiff on December 3, 2008. R. at 515-519. Dr. Boone-Sanford concluded that the Plaintiff's "insight, judgment and decision-making abilities are adequate for everyday life" and that she is "likely able to manage her finances independently." R. at 519. Dr. Boone-Sanford further found that the Plaintiff's ability to "interact in a socially appropriate manner with co-workers, supervisors and the public is fair," her "ability to understand, remember and implement instructions in a work place is fair," and her "ability to cope with work related demands and responsibility is fair to poor." *Id.* Dr. Boone-Sanford concluded that the Plaintiff's "prognosis for obtaining employment is fair" and her "prognosis for maintaining employment is fair to poor." *Id.*

In the ALJ's decision, he stated that he gave the opinion of Dr. Boone-Sanford "some weight."[5] R. at 25.

---

[5] The ALJ referred to Dr. Boone-Sanford as "Dr. Shirley Boone," but they appear to be one and the same.

> The consultative examination conducted by Dr. Shirley Boone is given some weight. The claimant provided a great deal of information to Dr. Boone that does not appear elsewhere in the record, such as her family and home life and her active lifestyle with her young son. Furthermore, Dr. Boone, although assessing the claimant with mental impairments that she was never previously and has not since been treated for does ascribed [sic] abilities to the claimant that fully support the residual functional capacity determined above.

*Id.*

The record also reflects that Shripal K. Makim, M.D., performed a psychiatric evaluation of Plaintiff on February 18, 2009, and treated Plaintiff for at least two follow-up sessions. *See* R. at 606-09. He noted that she has "a long history of depression, anxiety, and panic disorder." R. at 608. On March 23, 2009, Dr. Makim reported that she was "doing better" and was "less anxious and less fearful of her safety." R. at 607. On May 21, 2009, he again noted that the Plaintiff was "doing better," but that she continued to have "significant PTSD symptoms" and panic attacks. R. at 606. Dr. Makim also stated that "[s]he is barely able to function in her day-to-day life." *Id.*

In the ALJ's decision, he did not specifically discuss the treatment notes of Dr. Makim from 2009. The ALJ stated, however, that he gave little weight to the evidence submitted by the Plaintiff that was dated after December 31, 2008, the date she was last insured. R. at 25.

> There is some evidence, submitted by the claimant and counsel that come after December 31, 2008. This is important as the claimant's date last insured is December 31, 2008. The claimant's medical condition from January 1, 2009 through the present is not as relevant as her medical condition before that time. Therefore, any medical records coming after December 31, 2008 are likewise not as relevant and are given little weight.

*Id.*

Plaintiff argues that the ALJ erred when he failed to give proper weight to the opinions of Dr. Boone-Sanford and Dr. Makim, and that, if the ALJ had given those opinions the proper weight, he would have found that the Plaintiff was unable to work on a sustained basis. In response, the Commissioner argues that the ALJ's decision indicates that he gave some weight to the opinion of Dr. Boone-Sanford and found that it was consistent with the ALJ's assessment of the Plaintiff's RFC. Furthermore, the Commissioner argues, the ALJ stated his reasons for not giving great weight to the opinion of Dr. Makim. The ALJ stated that he gave little weight to the medical evidence that related to the treatment that Plaintiff received after December 31, 2008, the date she was last insured, and the Plaintiff has not pointed to anything in the record indicating that Dr. Makim's opinion was relevant to the severity of her mental impairments before December 31, 2008. The Commissioner argues further that the ALJ's decision indicates that he complied with the requirements of SSR 96-8p.

The undersigned agrees with the Commissioner that the ALJ's decision reflects that he complied with SSR 96-8p, which states that the "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," and that "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p. Thus, the ALJ's assessment of the Plaintiff's RFC indicated the *maximum* level of work that she could perform.

As discussed above, the ALJ found that the Plaintiff retained the RFC to perform light work with certain restrictions, including the requirement that she is "capable of unskilled work with adequate skills for making decisions and judgments, fairly," and that she "maintains a fair ability to appropriately interact with co-workers, supervisors and the general public." R. at 22. The ALJ concluded that his assessment of the Plaintiff's RFC was consistent with Dr. Boone-Sanford's opinion that Plaintiff has a "fair" ability to "interact in a socially appropriate manner with co-workers, supervisors and the public" and a "fair" "ability to understand, remember and implement instructions in a work place," while her "ability to cope with work related demands and responsibility is fair to poor." R. at 519. Furthermore, while the ALJ did not specifically mention Dr. Boone-Sanford's opinion that the Plaintiff's "prognosis for obtaining employment is fair" and her "prognosis for maintaining employment is

26

fair to poor," he did ask the Vocational Expert during the hearing to consider that Plaintiff has only a fair ability to obtain and maintain employment.[6] *See* R. at 67. Thus, a consideration of the record as a whole indicates that the ALJ did give "some weight" to the opinion of Dr. Boone-Sanford, and substantial evidence supports his conclusion that her opinion was consistent with the RFC assessment.

In addition, the ALJ also articulated his reasons for failing to give considerable weight the opinion of Dr. Makim. The ALJ stated that he gave little weight to the medical evidence submitted by the Plaintiff that related to treatment that she received after December 31, 2008, the date she was last insured. Plaintiff has not pointed to any evidence in the record indicating that Dr. Makim's opinion from February, March, and May of 2009 should have been considered relevant to the issue of whether she was disabled in the period before December 31, 2008.

---

[6] The transcript of the hearing indicates that the ALJ presented a hypothetical to the Vocational Expert that included the following limitations: "The person would be able to interact socially in an appropriate manner with co-workers, supervisors and the public, barely, as well with her ability to understand, remember and implement instructions as a – in a workplace would be fairly, as it would to cope with work-related domains and responsibilities and to obtain and maintain impairment." R. at 66-67. The Commissioner interprets the transcript as indicating that the ALJ stated in the hypothetical to consider a person who had a "fair" ability to obtain and maintain employment (rather than impairment) and the undersigned agrees with that interpretation. *See* Def. Br. at 17 n.8. It would make no sense for the ALJ to ask the Vocational Expert to consider an individual with a "fair" ability to "obtain and maintain impairment."

Furthermore, as noted above, the Eleventh Circuit has held that an ALJ need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). In this case, the ALJ's decision indicates that he considered the Plaintiff's medical condition as a whole and substantial evidence supports his RFC assessment. Even if the ALJ had considered and discussed the opinion of Dr. Makim from 2009, Plaintiff has not established that Dr. Makim's opinion would have likely resulted in a finding by the ALJ that Plaintiff did not maintain the ability to perform sustained work on a regular basis. Instead, the undersigned finds that Dr. Makim's opinion is largely cumulative of the other evidence in the record regarding the severity of Plaintiff's mental impairments. To the extent that Plaintiff is relying on Dr. Makim's statement in May of 2009 that the Plaintiff "is barely able to function in her day-to-day life," the undersigned agrees with the Commissioner that this statement appears to be coming from the Plaintiff herself, and does not indicate that it reflects the medical opinion of Dr. Makim. *See* R. at 606 (noting that Plaintiff was "doing better").

In sum, the undersigned rejects the Plaintiff's argument that the ALJ failed to give proper consideration to the opinions of Dr. Boone-Sanford and Dr. Makim, and

that the ALJ erred by finding that the Plaintiff retained the RFC to perform light work on a sustained basis, with certain limitations and restrictions. The undersigned finds that substantial evidence supports the ALJ's assessment of the Plaintiff's RFC.

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the undersigned **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**. **IT IS FURTHER RECOMMENDED** that judgment be entered in favor of the Defendant.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 15th day of July, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE